UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ATWOOD DISTRIBUTING, L.P.,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA; OFFICE OF THE<br>UNITED STATES TRADE REPRESENTATIVE;<br>ROBERT E. LIGHTHIZER, U.S. TRADE<br>REPRESENTATIVE; U.S. CUSTOMS & BORDER<br>PROTECTION; MARK A. MORGAN, U.S. CUSTOMS<br>& BORDER PROTECTION ACTING COMMISSIONER<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Court No. 20-01684<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **AMENDED** COMPLAINT

Plaintiff Atwood Distributing, L.P., (hereinafter "Plaintiff"), by and through its attorneys, alleges and states a cause of action as follows:

1. This Complaint concerns the unlawful and arbitrary imposition of tariffs pursuant to Section 301 ("Section 301") of the Trade Act of 1974 ("Trade Act") (19 U.S.C. § 2411) on two lists of imports from China, commonly referred to by the Office of the U.S. Trade Representative ("USTR") as "List 3" and "List 4A." *See Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018); *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 43,304 (Aug. 20, 2019).

2. Congress did not grant unlimited authority to the President or the USTR to impose trade restrictions under Section 301.  After concluding that China's unfair intellectual property policies and practices burdened U.S. commerce –finding that required or pressured technology transfer significantly undermines the value of American technology, thereby distorting markets and compromising U.S. global competitiveness– pursuant to Section 301, Section 304 ("Section 304") of the Trade Act (19 U.S.C. § 2414) required USTR to determine what action to take, if any, within 12 months after initiation of that investigation.

3. The decision to impose tariffs on List 3 and 4A is not in accordance with Section 301. USTR imposed additional duties on two lists of products within the 12-month timeframe under List 1 and List 2, which are not subject to this case. *See Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018); *Notice of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018). USTR did not, however, issue List 3 and List 4A tariffs within that 12-month timeframe. Moreover, although Section 307 ("Section 307") of the Trade Act (19 U.S.C. § 2417) does permit USTR to "modify" the duties imposed in order to achieve the goals of a Section 301 investigation, that statutory authority cannot justify USTR's issuance of Lists 3 and 4A. While Lists 1 and 2 may have been issued in order to address the unfair intellectual property policies and practices originally investigated under Section 301, Lists 3 and 4A were issued in response to China's retaliatory tariffs, and for other unrelated issues.  Finally, even if USTR deemed Lists 1 and 2 as "no longer appropriate" for its goals, as it also did here, the

4833-3883-4894\1

Trade Act permits USTR only to delay, taper, or terminate, not to drastically expand the actions it has already taken.

4. The arbitrary manner in which the Defendants implemented the Lists 3 and 4A tariff actions violates the Administrative Procedure Act ("APA").  USTR (1) failed to provide sufficient opportunity for comment on its promulgation of List 3, *e.g.*, requiring interested parties to submit affirmative and rebuttal comments on the same day; (2) failed to consider relevant factors when making its decision to implement Lists 3 and 4, *e.g.*, undertaking no analysis of the supposed "increased burden" imposed on U.S. commerce from the unfair policies and practices that it originally investigated; and (3) failed to connect the record facts to the choices it made.  USTR did not explain how over 6,000 comments for List 3 and over 3,000 comments for List 4 shaped its ultimate decision.  Accordingly, USTR's decision-making did not satisfy the standards set out by the APA.

5. The Court should set aside and declare Defendants' actions as *ultra vires* and otherwise contrary to law; enjoin Defendants against taking further action to collect import tariffs, enforce, or otherwise implement Lists 3 and 4A; as well as order Defendants to refund (with interest) any tariffs paid by Plaintiff pursuant to Lists 3 and 4A.

## JURISDICTION

6. The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B) and (D), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, tariffs, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;" or

3

"administration and enforcement with respect to [the foregoing] matters."  28 U.S.C. § 1581(i)(1)(B), (D).

## PARTIES

7.  Plaintiff is a U.S. importer of merchandise that has been and will be subject to the additional *ad valorem* tariffs under List 3 and List 4A, and has paid such tariffs.  Plaintiffs sell a variety of retail products to farmers and ranchers nationwide.  Plaintiffs import a variety of items subject to Lists 3 and 4A, and that are classified in the U.S. Harmonized Tariff Schedule ("USHTS") classifications set forth in **Exhibit 1** to this Complaint.

8.  Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9.  USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, pursuant to the direction of the President.  USTR conducted the Section 301 investigation at issue and made numerous decisions regarding Lists 3 and 4.

10. Ambassador Robert Lighthizer currently holds the position of USTR and serves as the director of the Office of the USTR.  In these capacities, he made numerous decisions regarding Lists 3 and 4.

11. Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects and enforces customs laws with respect to tariffs on imports.  CBP collected payments and continues to collect payments made by Plaintiff to account for the tariffs imposed by USTR under Lists 3 and 4.

4833-3883-4894\1

12. Defendant Mark A. Morgan is the Acting Commissioner of CBP.  In this capacity, he oversees CBP's collection of tariffs paid by Plaintiff under Lists 3 and 4, and for customs enforcement with respect to Lists 3 and 4.

## STANDING

13. Plaintiff has standing because it is "adversely affected or aggrieved by agency action" within the meaning of the APA, 5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").  Plaintiff imports a variety of merchandise into the United States that originate from China under U.S. Harmonized Tariff Schedule classifications covered by Lists 3 and 4A**.**  Tariffs imposed by Defendants pursuant to Lists 3 and 4A adversely affected and aggrieved Plaintiff because it was required to pay these unlawful tariffs.  If Plaintiff refuses to pay these unlawful tariffs, Defendants will use coercive means under the customs laws to compel Plaintiff's payment. These harms to Plaintiff caused by Defendants are ongoing and will continue for the foreseeable future.

## TIMELINESS OF THE ACTION

14. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues."  28 U.S.C. § 2636(i).

15. The instant action contests action taken by Defendants as set forth in the publication of Lists 3 and 4A.  *See Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018); *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

4833-3883-4894\1

*Innovation,* 84 Fed. Reg. 43,304 (Aug. 20, 2019).  Plaintiff's claims accrued either on September 21, 2018, when USTR published notice of List 3 in the *Federal Register*, or on September 24, 2018, when the List 3 tariff went into effect.  *Id.*  Plaintiff has therefore timely filed this action.

## RELEVANT LAW

16. Section 301 authorizes USTR to investigate a foreign country's trade practices.  19 U.S.C. § 2411(b).  If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered unfair practice.  *Id.* § 2411(b), (c)(1)(B).

17. Section 304 requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation.  *Id.* § 2414(a)(1)(B), (2)(B).

18. Section 307 (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate."  *Id.* § 2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

## INVESTIGATIONS

19. On August 14, 2017, President Trump directed Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology.  *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).

4833-3883-4894\1

20. On August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

21. On March 22, 2018, USTR released the report announcing the results of such investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018).  USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17.  USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's processes for licensing technology transfers from U.S. to Chinese companies on terms that favor Chinese recipients, *id.* at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for the purposes of large-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171.  In the report, USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

22. At that time, USTR also published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimate that China's policies result in harm to the U.S. economy of at least $50 billion per year."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about- us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet.  USTR then indicated that, consistent with a directive from the President, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies."  *Id.*; *see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

**LIST 1 & LIST 2**

23. On April 6, 2018, USTR published notice of its intent to impose additional tariffs of 25% on products of Chinese origin.  *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018).   The proposed list covered "approximately $50 billion in terms of estimated annual trade value for calendar year 2018."  Id. at 14,907.  USTR stated that it arrived at this number because that was the amount "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation."   OFFICE OF THE UNITED STATES TRADE

8

REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press- office/press-releases/2018/april/under-section-301-action-ustr.

24. On June 20, 2018, USTR published notice of the final list of products subject to an additional tariff of 25% *ad valorem*, known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018).  USTR explained that it "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion."  *Id.* at 28,711.

25. Concurrently, USTR announced its intent to impose a 25% *ad valorem* duty on a second proposed list of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation.  *Id.* at 28,712.  USTR announced the proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion."  *Id.* at 28,711-12.

26. On August 16, 2018, USTR published notice of the List 2 products subject to an additional tariff of 25% *ad valorem,* comprising "279 tariff subheadings" whose "annual trade value . . . remains approximately $16 billion."  *Notice of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

27. Following the President's directive to consider imposing tariffs on $50 billion in Chinese products, China threatened to impose retaliatory tariffs on the same value of imports from the United States.  In response, President Trump "instructed the USTR to consider whether

$100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation."  THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional-proposed-section-301-remedies/.

28. On June 18, 2018, President Trump directed USTR to consider whether the United States should impose additional tariffs on products from China with an estimated trade value of $200 billion—despite USTR having not yet implemented List 1 and List 2.  President Trump recognized that his decision was motivated by China's threatened retaliatory "tariffs on $50 billion worth of United States exports".  THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/.  USTR stated that it would design the newly proposed tariffs to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation, thus acknowledging the President's directive.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0.

## LIST 3 & LIST 4A

29. China imposed 25% *ad valorem* tariffs on $50 billion in U.S. goods, implemented in two stages of $34 billion and $16 billion, at the same time that the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

4833-3883-4894\1

Following this response, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (July 17, 2018).  USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id.* at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)).  USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments.  *Id.* at 33,608.

30. USTR confirmed in its notice that China's decision to impose "retaliatory tariffs" was its primary basis for its proposed action.  *Id*. at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices").  USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory tariffs imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.*; *see also id.*  (Because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S.

supplemental action must cover a substantial percentage of Chinese imports.").  USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated and only pointed to China's retaliatory measures.  *See id.*

31.  USTR's contemporaneous press statements corroborated the contents of its notice:  China's retaliatory tariffs motivated its proposed action.  Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

32.  On August 1, 2018, Ambassador Lighthizer announced that, in light of China's retaliatory tariffs, USTR would propose to increase the additional duty from 10% to 25% *ad valorem*. Rather than addressing the practices that USTR investigated pursuant to Section 301 of the Trade Act, he stated that China "[r]egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses."   OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative.

33.  USTR, at the direction of President Trump, proposed "raising the level of the additional tariff in the proposed supplemental action from 10 percent to 25 percent."  *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual*

4833-3883-4894\1

*Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018).  USTR also set new dates for a public hearing over six days ending on August 27, 2018.  *See id.*; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List (Aug. 17, 2018) (modifying hearing schedule), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.*

34. At that time, USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018—less than a month later—as the new deadline for both initial and rebuttal comments from the public.  83 Fed. Reg. at 38,761.  That adjustment, deviating from its past practices, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties.  USTR also limited each hearing participant to five minutes.  Docket No.  USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001.      Despite    those obstacles, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments.  *Id.*

35. Only eleven days after receiving these 6,000 comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China."  THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018) https://www.whitehouse.gov/briefings-statements/statement-from- the-president-4/.  Once again, the President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 tariffs) motived his decision, and he immediately promised to proceed with "phase three" of the plan—an *additional $267*

*billion tariff action—* "if China takes retaliatory action against our farmers or other industries*." Id.*

36. On September 21, 2018, USTR published notice of the final list of products subject to an additional tariff, known as "List 3." 83 Fed. Reg. at 47,974. USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019. *Id.* USTR determined that the List 3 tariffs would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id.* USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses. *Id.*

37. As legal support for its action, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id.* (brackets omitted). USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.* USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded the current action by choosing to cause further harm to the U.S. economy, by increasing tariffs on U.S. exports to China." *Id.* at 47,975.

38. Trade negotiations by USTR with its Chinese counterparts in an attempt to resolve differences between the two countries resulted in a delay in the schedule to increase the List 3 tariff rate from 10 to 25%.  *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

39. These negotiations failed, and in May 2019, USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the date of export.  *See Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also Implementing Modification to Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019).  The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the tariff increase.  *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459.  Unlike with past imposition of new tariffs, USTR did not seek public comment but rather simply announced that the increase would occur.  *Id.*

40. In June 2019, USTR invited the public to seek exclusions from List 3 tariffs on a product-specific basis.  *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301:  China's Acts, Policies, and Practices*

*Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019).

41. The tariffs imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of the limited number of products for which USTR extended its originally granted exclusions from the List 3 tariffs. *See, e.g.*, *Notice of Product Exclusion Extensions:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).  Plaintiff may have already taken action in requesting the refund of a portion of tariffs paid on certain entries of granted exclusions from the List 3 tariffs through actions, including but not limited to, Prior Disclosure Offset, Protest, Post Summary Correction, or drawback filed with CBP, but which do not constitute all tariffs paid by Plaintiff under List 3.  Plaintiff in no way seeks to request a double refund on any entries or tariffs already refunded by these or any other means, but rather request recovery of such amounts that are not subject to pending refunds.

42. Only one week after publishing a notice of the decision to increase the tariff rate on merchandise in List 3, USTR declared its intent to proceed with another list—List 4— covering even more products subject to additional tariffs.  Under USTR's proposal, List 4 would impose additional tariffs of 25% *ad valorem* on products worth $300 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, (May 17, 2019).  USTR explained that its decision was motivated by China's "retreat[] from specific commitments made in previous

4833-3883-4894\1

[negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id.*

43. USTR again invited the public to comment on the proposed List 4 and participate in a hearing. *Id.* The public submitted nearly 3,000 comments, but despite the opportunity to comment, the timeline for participation in the hearing left little room for meaningful input. USTR required witnesses to submit drafts of their testimony by June 10, 2019, only about one week before the deadline for fully developed written comments, and again limited witnesses to five minutes of testimony at the hearing. *Id.*

44. On August 20, 2019 USTR issued a final notice adopting List 4 in two tranches. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A would impose a 10% *ad valorem* duty on goods worth roughly $120 billion, effective September 1, 2019. *Id.* at 43,304. List 4B would impose a 10% *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. *Id.* at 43,305. Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to make the bare claim that its determination "takes account of the public comments and the testimony." *Id.*

45. As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." *Id.* at 43,304. However, instead of finding any increased burden

4833-3883-4894\1

on U.S. commerce from the practices that were the subject of USTR's investigation, USTR simply pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.*

46. On August 30, 2019, only ten days later, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019). USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id.* at 45,822. USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. *Id.*

47. On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR announced that it would "suspend indefinitely the imposition of additional tariffs of 15 percent on products of China covered by" List 4B. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). USTR also announced that it would reduce the tariff rate applicable to products covered by List 4A, *id.*, an action that ultimately became effective on February 14, 2020, when the applicable tariff rate was lowered to 7.5%, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

48. List 4A tariffs remain in effect as of the date of this Complaint.  The proposed tariffs on products covered by List 4B remain suspended.  However, Defendants have indicated that List 4B could take effect in the near future if trade negotiations with China fail.  Defendants have coercive legal tools provided under the Tariff Act of 1930 to compel Plaintiff's payment of the unlawful tariffs under List 3 and List 4A, including but not limited to the imposition of severe penalties for refusal to comply.  Defendants have utilized these enforcement tools to coerce importers' payment of List 3 and List 4A tariffs, and Defendants have indicated their intention to continue compelling Plaintiff's compliance with List 3 and List 4A using these enforcement tools.

49. On September 16, 2020, a dispute settlement panel of the World Trade Organization ("WTO") ruled that the Section 301 tariffs imposed by the United States on imports from China are inconsistent with the United States obligations under the General Agreement on Tariffs and Trade ("GATT").

## STATEMENT OF CLAIMS

## COUNT ONE (DECLARATORY JUDGMENT ACT)

50. Plaintiff herein incorporates by reference paragraphs 1 through 49, supra, of this complaint.

51. The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

52. The Trade Act does not authorize the actions taken by Defendants that resulted in List 3 and List 4A tariffs.

53. Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and

4833-3883-4894\1

burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b).  USTR failed to predicate its actions giving rise to List 3 and List 4A on any such determination.

54. If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B).  USTR's action giving rise to List 3 and List 4A occurred in September 2018 and August 2019 respectively, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

55. Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases.  19 U.S.C. § 2417(a)(1)(B).  Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.  Congress did not authorize USTR to heighten its focused investigatory findings into an unrestricted trade war.

56. Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate."  19 U.S.C. § 2417(a)(1)(C).  Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

4833-3883-4894\1

57. Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4A are *ultra vires* and contrary to law.

## COUNT TWO (APA)

58. Paragraphs 1 through 57 are herein incorporated by reference.

59. The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

60. Defendants exceeded their authority under the Trade Act in promulgating Lists 3 and 4A and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

61. Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

62. Defendants also promulgated List 3 and 4A in an arbitrary and capricious manner when they failed to provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors in making their decisions, and failed to adequately explain their rationale. Defendants' predetermined decision-making resulted in the unlawful imposition of tariffs on imports covered by Lists 3 and 4A whose value equals $500 billion.

## COUNT THREE (DUE PROCESS CLAUSE)

63. Paragraphs 1 through 62 are herein incorporated by reference.

4833-3883-4894\1

64. The Due Process Clause of the Fifth Amendment to the United States Constitution guarantees that no one shall be "deprived of life, liberty or property without due process of law."

65. By failing to adhere to required legal procedures, including but not limited to insufficient notice and opportunity to be heard and procedures under the Trade Act, Defendants have deprived Plaintiff of its right to due process.

66. By promulgating, implementing, enforcing, and compelling compliance with the unlawful List 3 and List 4A tariffs, Defendants also have deprived Plaintiff of its right to due process.

67. These deprivations are ongoing and will continue for the foreseeable future, because Defendants continue to collect the unlawful List 3 and List 4A tariffs from Plaintiff, and have indicated their intention to compel such compliance and payment under the Tariff Act of 1930.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court

    (1) declare that Defendants' actions resulting in tariffs on products covered by Lists 3 and 4A are unauthorized by, and contrary to, the Trade Act;

    (2) declare that Defendants arbitrarily and unlawfully promulgated Lists 3 and 4A in violation of the APA;

    (3) declare that Defendants violated Plaintiff's right to due process of law by promulgating, implementing, and enforcing List 3 and List 4A;

    (4) vacate the List 3 and 4A rulemaking;

    (5) order Defendants to refund, with interest, any tariffs paid by Plaintiff pursuant to Lists 3 and/or 4A;

    (6) permanently enjoin Defendants from applying Lists 3 and 4A against Plaintiff, collecting any tariffs from Plaintiff pursuant to Lists 3 and/or 4A, or otherwise enforce List 3 and/or List 4A with respect to Plaintiff;

    (7) award Plaintiff its costs and reasonable attorney fees; and

    (8) grant such other and further relief as may be just and proper.

Respectfully submitted,

  /s/ David Townsend

David Townsend

T. Augustine Lo

~~September 18~~April 2, ~~2020~~2021

Dorsey and Whitney LLP

50 South Sixth Street, Suite 1500

Minneapolis, MN 55402-1498

Tel:   612-492-6192

Email: townsend.dave@dorsey.com

*Counsel to Atwood Distributing, L.P.*